UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

O

| | |
|---|---|
| STANLEY DONEN, | Case No. CV 08-03383 DDP (VBKx) |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** |
| PARAMOUNT PICTURES CORPORATION; VIACOM CONSUMER PRODUCTS, INC.; THE GAP, INC., | [Motion filed on September 5, 2008] |
| Defendants. | |

**I.  BACKGROUND**

Plaintiff Stanley Donen was the director of the motion picture "Funny Face" (the "Motion Picture"), which was distributed by Defendant Paramount Pictures.  Plaintiff alleges that he was the creator and author of the most significant parts of the film, including creation and control of the "design, filming and editing of a famous scene in the film in which Audrey Hepburn does an original and highly unique dance" (the "Dance Scene").  (Compl. ¶ 4.)

Paramount first registered the copyright of the Motion Picture in 1957, renewed the copyright in 1984, and is the current owner of

the Motion Picture's copyright. (D's RJN ¶ 1-2.; Compl. ¶ 5.) However, Plaintiff alleges that he never had a written employment contract with Paramount regarding the Motion Picture, whereby he conveyed his interest to Paramount. Plaintiff alleges that he is either the rightful sole owner or co-owner of the copyright in the Motion Picture, or owner of the Dance Scene as a separate component; the rights to which Paramount holds for him "in trust." (Compl. ¶ 5.) For the last 50 years, Plaintiff alleges that he "acquiesced" in Paramount's licensing the Motion Picture as an "entire" work to others for exhibition in theaters, television, and "subsequently developed media." (Compl. ¶ 5.)

In 2006, through its sister company Defendant Viacom Consumer Products, Paramount licensed the use of the Dance Scene to Defendant The Gap. Gap used the scene in 30 and 60 second television commercials advertising its clothing stores and merchandise and, in particular, "ladies pants." (Compl. ¶ 5-6.)

Plaintiff alleges that Gap's use infringed his copyright, because he never intended or "acquiesced" to the Motion Picture's use in a third party's commercial advertisement. (Id.) Plaintiff thus brought suit alleging alternatively copyright infringement or an accounting, and breach of implied contract.

Defendant now moves to dismiss under Rules 12(b)(1) and (6).

## II. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(1)

Under Rule 12(b)(1), a complaint may be dismissed for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). When considering a Rule 12(b)(1) motion challenging the substance of jurisdictional allegations, the Court may look beyond the

2

complaint. <u>White v. Lee</u>, 227 F.3d 1214, 1242 (9th Cir. 2000) (district court may consider extrinsic evidence when deciding a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction). However, the court may not resolve "genuinely disputed facts where the question of jurisdiction is dependent on the resolution of factual issues going to the merits." <u>Roberts v. Corrothers</u>, 812 F.2d 1173, 1177 (9th Cir. 1987)(internal citation omitted). Where jurisdiction is "intertwined with the merits," the court must "assume the truth of the allegations in the complaint . . . unless controverted by undisputed facts in the record." <u>White v. Lee</u>, 227 F.3d at 1242.

    B.   <u>Federal Rule of Civil Procedure 12(b)(6)</u>

Under Rule 12(b)(6), a complaint is dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering a 12(b)(6) motion, "all allegations of material fact are accepted as true and should be construed in the light most favorable to the plaintiff." <u>Resnick v. Hayes</u>, 213 F.3d 443, 447 (9th Cir. 2000). A court properly dismisses a complaint under Rule 12(b)(6), based upon the "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under the cognizable legal theory." <u>Baliesteri v. Pacifica Police Dept.</u>, 901 F.2d 696, 699 (9th Cir. 1990). The plaintiff's obligation requires more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955, 1964-65 (2007) (internal quotation omitted). However, the complaint must state "only enough facts to state a claim to relief that is plausible on its face." <u>Id.</u> at 1974. A well-pleaded complaint may proceed even

3

if it appears "that a recovery is very remote and unlikely." Id. at 1964 (quoting <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974)).

### C. Evidentiary Issues

A court may consider judicially noticed facts in ruling on a motion to dismiss for failure to state a claim. <u>Mack v. South Bay Beer Distrib., Inc.</u>, 798 F.2d 1279, 1282 (9th Cir. 1986) ("on a motion to dismiss a court may properly look beyond the complaint to matters of public record and doing so does not convert a Rule 12(b)(6) motion to one for summary judgment"), <u>rev'd on other grounds</u>, 501 U.S. 104 (1991); <u>MGIC Indem. Corp. v. Weisman</u>, 803 F.2d 500, 504 (9th Cir. 1986). "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "A court shall take judicial notice if requested by a party and supplied with the necessary information." Fed. R. Evid. 201(d).

Accordingly, the Court takes judicial notice of Defendant Paramount's 1957 copyright registration and 1984 renewal of registration. (<u>See</u> D's RJN ¶ 1-2.)

## III. DISCUSSION

### A. Rule 12(b)(1) - Plaintiff's Standing under the Employment Agreements

Defendants argue that Plaintiff does not have standing to assert copyright infringement, because he assigned any rights in the Motion Picture under his employment agreements (the "Loews Agreement") with either Loews Corporation or Paramount (the

4

"Paramount Agreement"). (Mot. 7; Shihabi Decl., Ex. A.) Defendants' argument is based on contracts provided to the Court by Paramount. As noted above, on a motion under Rule 12(b)(1), the Court may consider extrinsic evidence to determine standing. See, e.g., Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1142-43 (9th Cir. 2003)(on a motion under Rule 12(b)(1), finding that contracts signed by the plaintiff evidenced a "work made for hire" relationship, and that plaintiff lacked standing to sue for copyright infringement).

Loews owned all rights and proceeds from any of Plaintiff's work for it under his agreement. (Shihabi Decl., Ex. A ¶ 4.) The agreement also required Plaintiff to render services exclusively for Loews, unless he received its prior written consent. (Shihabi Decl., Ex. A ¶ 1, 3.) However, the Loews Agreement is ambiguous as to whether Plaintiff assigned any rights to work performed with Loews' permission for third parties. The Loews Agreement states that Plaintiff's new employer or contractor "shall be entitled" to any of his rights or proceeds, but does not explicitly assign, transfer, or otherwise encumber any of Plaintiff's rights or proceeds. (Shihabi Decl., Ex. A ¶ 5.) Plaintiff's further assignment to Loews of any residual rights to work created under the Loews Agreement similarly does not address the rights to work produced by Donen in third-party relationships. (Id. ¶ 4.)

When Loews (at this point, as MGM) agreed to permit Paramount to contract with Plaintiff for his work on the Motion Picture, there was no express assignment of rights to his work. (Shihabi Decl., Ex. C.) Defendants argue that Plaintiff's employment was presumptively deemed a "work made for hire" (services performed

5

1  without the possibility of acquiring rights) or, alternatively,
2  that his services were merely "loaned" without granting him the
3  capacity to acquire rights to his work.  (Mot. 8-9.)  Again, these
4  arguments are unsupported by the plain meaning of the text of the
5  Loews and Paramount Agreements.  In the only section which squarely
6  addresses this issue, the Loews Agreement states that Plaintiff's
7  services may be loaned "in any capacity" (Shihabi Decl., Ex. B ¶
8  5), which includes relationships beyond the traditional employer-
9  employee or work for hire settings.
10      As such, the employment agreements do not negate Plaintiff's
11 assertion of standing.
12      B.   Rule 12(b)(6)
13           1.   Separate Ownership of the Dance Scene
14      The Complaint includes allegations of three ownership
15 interests:  ownership or co-ownership of the entire Motion Picture,
16 and ownership of the Dance Scene.  The Motion Picture was
17 copyrighted by Paramount exclusively and in its own name in 1957.
18      Defendants cite Richlin for the proposition that no separate
19 copyright can exist in the Dance Scene, because the Motion Picture
20 is a unified work.  In that case, the Ninth Circuit examined the
21 creation of a separate copyright for a screenplay "treatment" (or
22 synopsis) created prior to the 1976 Act.  The court in Richlin held
23 that a component's contribution and any corresponding ownership
24 interest in a film is extinguished by the whole.  Richlin, 531 F.3d
25 at 975-76 ("A motion picture is a work to which many contribute;
26 however, those contributions ultimately merge to create a unitary
27 whole.")  However, the court in Richlin also noted that the
28

1  component parts of a motion picture "may or may not be
2  copyrightable." Id.
3      Here, the "component" is an actual scene in the film, which
4  Plaintiff alleges contains a distinguishable copyright that is held
5  by Paramount in "trust." (Compl. ¶ 5.)  To begin, this argument
6  directly contradicts the theory of a motion picture as a "unitary
7  whole." See id. at 975-76.  Even assuming Plaintiff's argument,
8  his claim is not supported by the Complaint.  Paramount registered
9  and renewed a copyright in the "entirety" of the Motion Picture.
10 (Id.; D's RJN ¶ 1.)  As such, even assuming the Dance Scene is a
11 copyrightable component, no separate copyright currently exists.
12 Therefore, Defendant Paramount does not hold an ownership interest
13 in this scene in "trust" for Plaintiff. See Richlin, 531 F.3d at
14 976 ("Assuming the Treatment is a copyrightable work [apart from
15 the motion picture], [plaintiffs] simply failed to secure federal
16 copyright for it.").
17     The Court grants Defendant's motion as to any claims which are
18 based on the Dance Scene as a separate, copyrightable work or
19 component.
20          2.   Copyright Ownership - Creation of an Implied Trust
21     Determinations of authorship and ownership of copyrights
22 acquired before 1976 are governed by the Copyright Act of 1909 (the
23 "1909 Act"). See 17 U.S.C. § 24, repealed by Copyright Act of 1976
24 (the "1976 Act"), 17 U.S.C. § 101 et seq.; see also Richlin v.
25 Metro-Goldwyn-Mayer Pictures, Inc., 531 F.3d 962, 967 (9th Cir.
26 2008)(analyzing the plaintiff's claim of co-authorship under the
27 1909 Act).
28

7

Defendants argue that a constructive trust cannot exist here, because courts "only impose such a constructive trust where one co-owner registers the renewal copyright in a joint work and another, undisputed, co-owner does not." (Reply 9-10.) Defendants fail to cite mandatory authority here, and the Ninth Circuit does not provide any such bright line rule. This is likely because the degree of dispute of copyright ownership does not per se indicate whether a constructive trust may apply as a matter of law; and instead Defendants' argument merely acknowledges that a court must determine ownership in order to find grounds for a trust. See, e.g., Zuill v. Shanahan, 80 F.3d 1366 (9th Cir. 1996). Plaintiff makes a plain allegation of sole or co-ownership of the Motion Picture in his Complaint, based upon authorship. (Compl. ¶ 5.) Under the 1909 Act, when a copyright was registered by a co-owner or non-owner of the right, the copyright registrant held an ownership interest "in trust" on behalf of the non-registering additional or "true" owner. Maurel v. Smith, 271 F. 211, 215 (2nd Cir. 1921); see also Oddo v. Ries, 743 F.2d 630 (9th Cir. 1984)(a co-owner's duty to account to another co-owner comes from "equitable doctrines relating to unjust enrichment and general principles of law governing the rights of co-owners" (internal quotations omitted)). Similarly, a co-owner who renews alone under the 1976 Act takes legal title to the renewal copyright as constructive trustee on behalf of the non-renewing co-owner. Pye v. Mitchell, 574 F.2d 476, 480 (9th Cir. 1978).

As such, Plaintiff has pled sufficient allegations of a trust for the purposes of this motion, and any decision by the Court is

more appropriately deferred to a motion for summary judgment or trial.

        3.    Statute of Limitations and Laches[1]

The 1976 Act's statute of limitations provides that "[n]o civil action shall be maintained under the [Act] unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b). A cause of action for infringement accrues when one has "knowledge of a violation or is chargeable with such." Roley v. New World Pictures, 19 F.3d 479, 480 (9th Cir. 1994). On the other hand, an "authorship" claim or subsidiary claim for accounting is barred three years from "plain and express repudiation" of authorship. Aalmuhammed v. Lee, 202 F.3d 1227, 1230-31 (9th Cir. 2000). However, while infringement claims are not limited by the authorship statute of limitations, they obviously require a threshold determination of ownership to permit standing. See Zuill, 80 F.3d at 1369 ("Because [plaintiffs] have no infringement claim, we cannot identify an asserted right of plaintiffs which can withstand the statute of limitations . . . [versus claims of co-ownership and] subsidiary remedies [such as for an accounting] . . . ."). The parties dispute whether the statute of limitations should be applied from the date of the infringing action in 2006 or the date of the creation of Plaintiff's copyright interest in (at

---

[1] Curiously, Plaintiff states that he "acquiesced" in Paramount's licensing of the Motion Picture for 50 years. (Compl. ¶ 5.) This appears to state an affirmative defense for Defendants against infringement until the present action, and may also imply abandonment by Plaintiff of his ownership interest. 4-13 Nimmer on Copyright § 13.07. However, for the purposes of this Motion, the word also plausibly implies some form of understanding or license between the parties.

9

latest) 1957. However, under either standard, the statute of frauds does not preclude Plaintiff's claims on this Motion.

Plaintiff asserts that Defendant Gap's advertisement was released in 2006. For an infringement claim, this would satisfy the statute of frauds, as Plaintiff's Complaint was filed in 2008. See, e.g., Polar Bear Prods v. Timex Corp., 384 F.3d 700, 706 (9th Cir. 2004).

Defendants next argue that there was a plain and express repudiation of Plaintiff's ownership interest, based on evidence purporting to show that the Motion Picture was theatrically released with a copyright notice in the opening credits, which solely referenced Paramount. (Mot. 16:13-16.) On a motion to dismiss, the Court may not consider evidence outside the pleadings. Multi Denominational Ministry of Cannibis & Rastafari, Inc. v. Gonzales, 474 F. Supp. 2d 1133, 1140 (9th Cir. 2007). Furthermore, the registration of a federal copyright by itself does not provide plain and express repudiation, and instead the inquiry is fact-intensive. See, e.g., Zuill, 80 F.3d at 1369 (discussing multiple factors, including a compensation agreement and notice of copyright placed on the work itself).

Similarly, laches requires an analysis of evidence which is not appropriate at this point in the proceedings. Laches requires the party to demonstrate: 1) delay; 2) that the delay was unreasonable; and 3) resulting prejudice. Danjaq LLC v. Sony Corp., 263, F.3d 942, 947 (9th Cir. 2001). While delay appears present from the Complaint, the other elements would require analysis based on extrinsic evidence.

10

1  The Court therefore finds that the statute of frauds and
2  laches do not preclude Plaintiff's claim for infringement.
3       3.  <u>Implied Contract Claim</u>
4  Defendant argues that there can be no claim for implied
5  contract because there was a express contract between the parties
6  covering the same subject matter.  <u>See</u> <u>Cal. Med. Ass'n, Inc. v.</u>
7  <u>Aetna U.S. Healthcare of Cal., Inc.</u>, 94 Cal. App. 4th 151, 172-73
8  (Cal. Ct. App. 2001).
9  As noted above, there was no contract with Paramount which
10  expressly or plainly covered the rights and proceeds of Plaintiff's
11  work, for the purposes of this Motion.
12  **IV. CONCLUSION**
13  The Court GRANTS in part and DENIES in part the motion to
14  dismiss.

IT IS SO ORDERED.

Dated: November 20, 2008

               DEAN D. PREGERSON
               United States District Judge